# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| SHAWN CLARKE SPOTTSWOOD, | Case No. 19-cv-1331 (MJD/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| WASHINGTON COUNTY, MINNESOTA, | |
| Defendant. | |

This action comes before the Court on Plaintiff Shawn Clarke Spottswood's (1) Amended Complaint (Dkt. 14); (2) Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 2) ("IFP Application")); and (3) "Referral Request from Judge" (Dkt. 21) ("Referral Motion"). For the reasons discussed below, the Court grants the Referral Motion and the IFP Application. Furthermore, given various problems in the Amended Complaint, the Court orders Spottswood to file a second amended complaint within 30 days. If he does not do so, the Court will treat the Amended Complaint as the operative pleading and—consistent with the discussion below—likely recommend its dismissal.

## I.  BACKGROUND AND COMPLAINT ALLEGATIONS

### A.  Case Background

Spottswood filed this action's original Complaint on May 20, 2019. (Dkt. 1 at 1.) That pleading named two defendants; one was listed as "Chairman of County of

Commissioners." (*Id.*) In response, the Court entered an Order stating that it assumed that Spottswood meant here the chairperson of the Washington County Board of Commissioners. (*See* Dkt. 3 at 2.) The Court also ordered Spottswood to file an addendum stating the capacity in which he meant to sue the chairperson. (*See id.*)

Spottswood filed an addendum in August 2019, but it did not provide a capacity specification. (*See* Dkt. 4; *see also* Dkt. 11 at 1.) Later that month, Spottswood filed a motion to amend his complaint. (*See* Dkt. 10.) The Court granted that motion, and Spottswood filed the Amended Complaint on October 21, 2019. (*See* Dkt. 11 at 3; Dkt. 14 at 1.[1])

**B. Amended Complaint**

The Amended Complaint specifically names only one defendant: Washington County. (*See* Dkt. 14 at 1.) The pleading's thrust concerns the County's investigation and prosecution of Spottswood for a charge of possessing tools for burglary or theft. (*See id.* at 2; *see also* Register of Actions, *State v. Spottswood*, No. 82-CR-15-4099, *available at* http://pa.courts.state.mn.us (last accessed Jan. 2, 2020) ("State-Court Docket").[2]) In September 2015, county authorities charged Spottswood with one count of possessing such tools. (*See* State-Court Docket.) A jury convicted him in March 2017, but

---

[1] Because the Complaint is not paginated consecutively, the Court's references to it use the page numbers provided by the Court's CM/ECF system.

[2] The state-court records cited in this Order are not attached to any filings. They are publicly accessible, however, and this Court may take judicial notice of public court records. *See, e.g.*, *Bellino v. Grinde*, No. 18-cv-1013 (NEB/LIB), 2019 WL 368398, at *1 n.1 (D. Minn. Jan. 30, 2019) (citing cases).

2

Spottswood filed a motion for a judgment of acquittal, and the state court granted that motion. (*See id.*; Order on Mot. for J. of Acquittal, *State v. Spottswood*, No. 82-CR-15-4099 (Minn. Dist. Ct. Apr. 17, 2017).)

The Amended Complaint contends that Washington County police investigators, and the prosecutor in Spottswood's criminal case, violated his constitutional rights. (*See, e.g.*, Dkt. 14 at 6-7.) Spottswood alleges that Sara Peulen—identified as a deputy with the Washington County Sheriff's Office—made false statements in a report used to justify an "illegal [search] and seizure." (*Id.* at 7.) This search and seizure was what led to the discovery of a set of so-called jiggler keys, Spottswood's possession of which led to his prosecution. (*See, e.g.*, *id.* at 6.) Spottswood also alleges that a prosecutor with the last name of "Wedes" reviewed relevant police video, and knew from that video that Peulen had made false statements, but nevertheless continued prosecuting Spottswood. (*See id.* at 7.) Furthermore, he generally alleges that Wedes acted maliciously during Spottswood's prosecution, which negatively affected Spottswood in various ways both before and during trial. (*See id.* at 8-9.) Spottswood claims that this conduct violated his rights under the Fourth and Eighth Amendments. (*See, e.g.*, *id.* at 4.)

Spottswood also claims that after the entry of his judgment of acquittal, a corrections officer at the Washington County Jail demanded that Spottswood clean his cell before being allowed to leave. (*See id.* at 9.) He claims that this violated his rights under the Thirteenth Amendment. (*See id.* at 4, 9.)

In addition to these constitutional causes of action, the Amended Complaint includes a claim for "compensation for exoneration" under Minn. Stat. § 611.362. Under

3

§ 611.362, subd. 1, "[a] person who receives an order under [Minn. Stat. § 590.11] determining that the person is entitled to compensation based on exoneration may bring a claim for an award . . . ."[3]

As for relief, Spottswood seeks $3.25 million in damages: $50,000 for the § 611.362 claim, and $3.2 million for the constitutional violations. (Dkt. 14 at 10.) He also appears to seek, as part of his relief under § 611.362, additional compensation so that he can attend college. (*See id.*)

### C. Referral Motion

Spottswood filed the Referral Motion on December 18, 2019. In that filing, Spottswood stated that he had been referred to the Federal Bar Association's Pro Se Project ("PSP") by those he had contacted for assistance as part of "trying to obtain counsel for [his] case." (*See* Dkt. 21 at 1.) When he reached out to the PSP, he states, he was told that he could not receive PSP assistance "without a referral from a federal judge." (*Id.*) The Referral Motion thus asks this Court to provide such a referral. (*See id.*)

## II. ANALYSIS

### A. Referral Motion and Order to Amend

The Court will address the Referral Motion first. "[T]he Court has no obligation to refer a pro se litigant to the [PSP]." *Rickmyer v. ABM Sec. Servs., Inc.*, No. 15-cv-4221 (JRT/FLN), 2016 WL 1248677, at *5 (D. Minn. Mar. 29, 2016) (citing cases), *aff'd*,

---

[3] Section 590.11 sets forth how individuals can pursue an order determining eligibility for exoneration-based compensation. Minn. Stat. § 590.11, subds. 2-7.

668 F. App'x 685 (8th Cir. 2016); *see also Henderson v. Minnesota*, No. 19-cv-0135 (MJD/ECW), 2019 WL 2223950, at *2 (D. Minn. May 23, 2019) (quoting *Rickmyer*). But "[i]n civil rights matters the court may, pursuant to 28 U.S.C. § 1915, 'request' an attorney to represent a party if, within the court's discretion, the circumstances are such that would properly justify such a request." *Mosby v. Mabry*, 697 F.2d 213, 214 (8th Cir. 1982) (emphasis removed).

Among the factors a district court should consider when determining whether to appoint counsel in a civil case are "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips v. Jasper County Jail*, 437 F.3d 791, 794 (8th Cir. 2006) (citing *Edgington v. Mo. Dep't of Corrs.*, 52 F.3d 777, 780 (8th Cir. 1995)). In this case, some of these factors suggest that this Court need not refer Spottswood to the PSP. But after reading the Amended Complaint and noting Spottswood's repeated difficulties in addressing capacity issues, the Court believes that the circumstances here justify a referral. As the following discussion suggests, an attorney may at the very least be able to help Spottswood determine whether the facts he alleges in the Amended Complaint could support some sort of individual-capacity claim against one or more defendants.[4]

---

[4] That attorney may also be able to help Spottswood understand whether his prior state-court action pressing similar issues (*see* note 7 *infra*) affects his ability to bring this action.

The Court thus will grant the Referral Motion: the Court will refer Spottswood by separate correspondence to the PSP. However, while one of the PSP's volunteer lawyers **may** agree to meet with or represent Spottswood, **there is no requirement that a volunteer lawyer do either or that any lawyer be appointed to represent him**.

Furthermore, the Court also orders Spottswood to file a Second Amended Complaint. The analysis below discusses why—if the Complaint goes unamended—the Court will recommend that the present Amended Complaint be dismissed in its entirety. If Spottswood believes that he can cure these shortcomings and plead an actionable claim, he must file a Second Amended Complaint within 30 days of this Order's date.[5] If a Second Amended Complaint is filed, it must be an entirely new pleading clearly labeled "Second Amended Complaint." It must comply with the basic pleading rules prescribed by Federal Rules of Civil Procedure 8 through 11, and it must describe the specific factual and legal bases for Spottswood's claims in a clear, complete, and well-organized fashion. Furthermore, for any individual defendant named, the Second Amended Complaint must specify the capacity or capacities in which Spottswood is suing that person for purposes of any § 1983 claims.

If Spottswood does not file a Second Amended Complaint satisfying these conditions within the time allowed, the Court will issue a recommendation using the Amended Complaint as the operative pleading. As the discussion below will show, the

---

[5] If Spottswood secures legal representation and that lawyer needs more time to help Spottswood prepare a Second Amended Complaint, the Court will entertain a motion for extension of this Order's deadline for the Second Amended Complaint's filing.

6

Court believes that if it has to issue a report and recommendation addressing the Amended Complaint, it will recommend dismissal of this action in its entirety.

   B.   **IFP Application**

Rather than pay this action's filing fee, Spottswood moved for permission to proceed *in forma pauperis* (IFP) in this action. (*See* Dkt. 2.) After review, the Court concludes that Spottswood qualifies financially for IFP status. The Court therefore grants the IFP Application. However, because the Court foresees the possible need to screen Spottswood's Second Amended Complaint, the Court will not order that the Clerk of Court take any service-related actions at this time.

   C.   **Analysis of Amended Complaint**

As noted above, if the Court were to consider the present Complaint "as is," it would recommend dismissing the Complaint in its entirety. *See* 28 U.S.C. § 1915(e)(2)(B); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); *Carter v. Schafer*, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[T]he provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service."). To help Spottswood and/or any future counsel he may obtain, the Court will explain why it would recommend dismissal, so that any future Second Amended Complaint can take that feedback into account.

      1.   **Screening Standards**

In reviewing whether the Amended Complaint states a claim for which relief may be granted, this Court must accept its factual allegations as true and draw all reasonable

inferences in Spottswood's favor. *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). The Amended Complaint's factual allegations need not be detailed, but must be enough to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing the Complaint's sufficiency, this Court may disregard legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Pro se complaints are to be construed liberally, but must still allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

### 2. Proper Defendants

As noted above, the Amended Complaint plainly names Washington County as a defendant. (*See* Dkt. 14 at 1.) But it also contains allegations about at least two named individuals: Peulen and Wedes. (*See generally id.* at 4-6.) Furthermore, Spottswood also alleges that an unidentified corrections officer inappropriately forced him (Spottswood) to clean his cell after entry of the judgment of acquittal. (*See generally id.* at 4-6, 9.) Given its duty to construe pro se filings liberally, *see, e.g.*, *Topchian v. JP Morgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), the Court would assume (if it had to) that Spottswood also meant to name Peulen, Wedes, and the unidentified corrections officer as defendants.

This assumption, however, would lead to a problem that this Court has already raised with Spottswood twice: the capacity in which individual defendants are being sued. To the extent a plaintiff means to sue government employees for constitutional

8

violations, he must indicate whether he means to sue the employees in their individual capacities, their official capacities, or both. The Court has already flagged this capacity issue for Spottswood twice in this case. Addressing Spottswood's initial Complaint, this Court noted that he needed to specify the capacity in which he was suing the "Chairman of County of Commissioners." (Dkt. 3 at 2.) Furthermore, in the Order permitting Spottswood to file an amended complaint, the Court instructed him that "[t]o the extent that [he] contends that government officials violated his constitutional rights, he must specify whether he is suing those officials in their individual capacities, their official capacities, or both." (Dkt. 11 at 2.)

Notwithstanding all this, the Amended Complaint does not specify the capacity in which Spottswood seeks to sue any individual defendants. As Spottswood has been warned about this capacity issue at least twice, the Court—were it issuing a recommendation on the Amended Complaint here and now—would not be inclined to delay this case further to let Spottswood specify capacities.[6] In the Eighth Circuit, the default rule is that if a pleading does not specify the capacity in which the plaintiff is suing an individual, a court will treat the claims against that defendant as official-capacity claims only. *See, e.g.*, *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999); *Riddley v. Brott*, No. 15-cv-0569 (ADM/SER), 2016 WL 11483857, at *2 (D. Minn. July 25, 2016) (citing *Johnson v. Outboard Motor Corp.*, 172 F.3d 531, 535 (8th

---

[6] This is particularly true because Spottswood himself did not specifically name any individuals as defendants. That is, it is only because the Court is liberally construing the Complaint that this capacity question arises in the first place.

9

Cir. 1999)), *report and recommendation adopted*, 2016 WL 4923502 (D. Minn. Sept. 15, 2016). As a result, were the Court to address the Amended Complaint in its present form, the Court would construe any claims by Spottswood against any individual defendants as official-capacity claims only.

> 3. **Constitutional Claims**

As noted above, the Amended Complaint claims that one or more municipal defendants violated Spottswood's constitutional rights. Generally, individuals cannot bring claims against municipal defendants directly under the U.S. Constitution; instead, one must bring the claims under 42 U.S.C. § 1983. *See, e.g.*, *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)).

This action's defendants are a Minnesota county and (construing the Compliant liberally) three individuals sued in their official capacities. Counties do not have individual capacities—after all, they are not individuals—so all of Spottswood's claims are official-capacity claims. Furthermore, as all three potential individual defendants work for Washington County, it appears that Amended Complaint's claims all just boil down to official-capacity claims against Washington County itself.

This undercuts the Amended Complaint, however, because official-capacity suits against a governmental entity are limited in scope. "[U]nder § 1983, local governments are responsible only for their *own* illegal acts. They are not vicariously liable for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations and internal punctuation omitted; emphasis in original); *see also, e.g.*, *LaBeau v. Sorenson*,

No. 18-cv-0651 (NEB/LIB), 2019 WL 7284109, at *5 (D. Minn. Dec. 27, 2019) (quoting *Connick*). In other words, to properly plead official-capacity claims against Washington County, Spottswood cannot merely allege that county employees violated his constitutional rights. Instead, he must allege that Washington County acted illegally itself.

As the Supreme Court has observed, the "action[s] for which [a local government] is actually responsible" are limited in important ways:

> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.

*Connick*, 563 U.S. at 60-61 (internal citations omitted); *see also Larson v. Bogenholm*, No. 18-cv-2554 (WMW/DTS), 2019 WL 5149985, at *9 (D. Minn. July 30, 2019) ("A municipality may be held liable under § 1983 for a constitutional violation that resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train." (citing cases)), *report and recommendation adopted*, 2019 WL 4565559 (D. Minn. Sept. 20, 2019). This means that for Spottswood to hold Washington County responsible for the constitutional violations that he claims he endured, he must allege some policy, custom, of failure to train by the county that caused those violations.

The Amended Complaint does not do this. It discusses the conduct of certain County employees, but it does not refer to any County policies, customs, or failures to train. The present Amended Complaint thus fails to state any official-capacity claim for

11

which this Court could grant relief. Because the Amended Complaint's constitutional claims are official-capacity claims only, the Court would recommend—if no Second Amended Complaint is forthcoming—that all of Spottswood's constitutional claims be dismissed without prejudice.

### 4. State-Law Claims

If the Amended Complaint's constitutional claims were dismissed, all that would remain is Spottswood's claim for compensation under Minn. St. § 611.362. (*See* Dkt. 14 at 4.) Section 611.362 is a Minnesota statute, so in these circumstances, all that would be left is a state-law claim—there would be no more federal-law claims to resolve. This would raise the question of whether this Court should exercise supplemental jurisdiction over Spottswood's state-law claim if the Court dismisses the federal-law claims.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Section 1367(c)(3) specifies, however, that a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."

The Eighth Circuit has discussed these provisions as follows:

A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity. [I]n the usual

case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Wilson v. Miller*, 821 F.3d 963, 970-71 (8th Cir. 2016) (citations and internal quotation marks omitted; brackets and ellipses in original).

The *Wilson* quote's last sentence is key here. Under this Court's recommendations above for the Amended Complaint, Spottswood's federal-law claims would be "eliminated" well before trial. There is no indication that this case would be "unusual" in any way that would support exercising supplemental jurisdiction over the remaining state-law claim. As a result, if this action comes to this juncture, the Court will recommend declining to exercise supplemental jurisdiction over Spottswood's state-law claim, and so will recommend dismissal of that claim without prejudice for lack of subject-matter jurisdiction.[7]

---

[7] One note for the sake of completeness. There are various similarities between Spottswood's Amended Complaint and filings he made in Minnesota state court in *Spottswood v. Washington County*, No. 82-cv-19-2027 (Minn. Dist. Ct.). Given these similarities, the Court has some concern that it might lack jurisdiction over this action based on the so-called *Rooker-Feldman* doctrine, which bars federal courts from reviewing cases where "'state court losers . . . invit[e] district court review and rejection of [state-court] judgments.'" *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)). Normally this Court must address questions of its jurisdiction before addressing merits issues. But the Eighth Circuit has indicated that where *Rooker-Feldman*'s applicability is "murky," but "the merits easily result in dismissal," a court may bypass consideration of *Rooker-Feldman* doctrine and proceed directly to the merits. *See King v. City of Crestwood*, 899 F.3d 643, 647-48 (8th Cir. 2018). As the Amended Complaint presently stands, the federal-law components of Spottswood's claims would easily fail on the merits, and the state-law components of his claims would then be easily subject to dismissal based on Eighth Circuit precedent on supplemental jurisdiction. Given this, if

13

In summary, then, if Spottswood fails to submit a Second Amended Complaint following the directions given above, then the Court will issue a report and recommendation analyzing the present Amended Complaint. As the discussion above suggests, that report and recommendation will likely recommend this action's dismissal. Spottswood—or any counsel he is able to secure—should therefore consider the points above in deciding whether (and how) to draft any Second Amended Complaint.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff Shawn Clarke Spottswood's request for a referral to the Federal Bar Association's Pro Se Project (Dkt. 21) is **GRANTED.** The Court will refer Spottswood by separate correspondence to the PSP.

2. Spottswood's Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 2) is **GRANTED**. (The Clerk of Court need not take any service-related action at this time.)

3. Spottswood must submit an amended complaint meeting the conditions discussed above within 30 days of this Order's date, failing which the Court will issue a report and recommendation treating the present Amended Complaint (Dkt. 14) as the operative pleading.

Dated: January 13, 2020
        *s/Elizabeth Cowan Wright*
        ELIZABETH COWAN WRIGHT
        United States Magistrate Judge

---

no Second Amended Complaint is forthcoming, the Court will be comfortable bypassing analysis of *Rooker-Feldman* questions.