**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| SHAWN CLARKE SPOTTSWOOD, | Case No. 19-CV-1331 (MJD/ECW) |
| Plaintiff, | |
| v. | **ORDER AND** |
| | **REPORT AND RECOMMENDATION** |
| WASHINGTON COUNTY, MINNESOTA; SARAH PEULEN; TOM WEDES; TAD JUDE; GARY SCHURRER; and UNKNOWN "WASHINGTON COUNTY JAIL EMPLOYEES," | |
| Defendants. | |

---

This action comes before the Court on Plaintiff Shawn Clarke Spottswood's Second Amended Complaint.  (Dkt. 26.)  For the following reasons, the Court recommends dismissing most of this action—specifically, all of its claims save those against Defendant Sarah Peulen and a limited vicarious-liability claim against Defendant Washington County.

## I.    BACKGROUND

Spottswood is a Minnesota resident whom state authorities charged in 2015 with one count of possessing burglary tools—a set of "jiggler keys"[1]—in violation of Minn.

---

[1]    The Court understands "jiggler keys" to be keylike tools that can help one open a lock even if one does not have its actual key.

Stat. § 609.59.[2]  (*See* Dkt. 26 at 1;[3] *see also* Register of Action, *State v. Spottswood*, No.
82-CR-15-4099 (Minn. Dist. Ct.).[4])  A jury convicted Spottswood after a March 2017
trial.  (*See* Order on Mot. for J. of Acquittal 1, *State v. Spottswood*, No. 82-CR-15-4099
(Minn. Dist. Ct. Apr. 17, 2017) ("Acquittal Order").)  Spottswood moved for a judgment
of acquittal, however, and the trial court granted that motion.  (*See id.* at 2.)  Specifically,
the trial court found that the State had not met its trial burden of showing § 609.59's
intent element.  (*See* Mem. at 3, *State v. Spottswood*, No. 82-CR-15-4099 (Minn. Dist. Ct.
Apr. 17, 2017); *see also* note 1 *supra* (providing statutory text).)  The State filed a notice
of appeal (and Spottswood a cross-appeal), but later voluntarily dismissed the appeal
before any briefing occurred.  (*See, e.g.*, Not. of Dismissal at 1, *State v. Spottswood*, No.

---

[2]      Section 609.59 reads as follows:

> Whoever has in possession any device, explosive, or other
> instrumentality with intent to use or permit the use of the
> same to commit burglary or theft may be sentenced to
> imprisonment for not more than three years or to payment of
> a fine of not more than $5,000, or both.

[3]      All citations to documents filed in this Court use the page numbers provided by
the Court's CM/ECF filing system.

[4]      Spottswood has provided copies of certain state-court documents as attachments to
the Second Amended Complaint, though these generally have his handwriting on them.
The Court has thus reviewed public court records to find clean copies of certain
documents, and the Court cites those materials in what follows.  This Court may take
judicial notice of public court records.  *See, e.g.*, *Bellino v. Grinde*, No. 18-CV-1013
(NEB/LIB), 2019 WL 368398, at *1 n.1 (D. Minn. Jan. 30, 2019) (citing cases).

A17-0615 (Minn. Ct. App. June 20, 2017).)  The investigation and prosecution of Spottswood provides the gravamen for this civil suit.[5]

The Second Amended Complaint names several defendants.  The first is Washington County, whose authorities charged and prosecuted Spottswood in his criminal trial and also administered the Washington County Jail ("WCJ"), where county authorities held Spottswood for a period of time.  (*See* Dkt. 26 at 1, 4.)  Four defendants are identified individuals involved in Spottswood's investigation and prosecution: (1) Sarah Peulen, a police deputy working for Washington County; (2) Tom Wedes, the prosecutor in Spottswood's case; (3) Tad Jude, a judge who handled parts of the criminal case; and (4) Gary Schurrer, a second judge who also handled the case and who oversaw the eventual trial.  (*See, e.g.*, *id.* at 3-4.)  Finally, Spottswood apparently wishes to sue

---

[5]    Spottswood filed this action's initial Complaint on May 20, 2019.  (*See* Dkt. 1 at 1.)  The Court ordered him to file an addendum stating the capacity in which he sought to sue certain individual defendants; he filed this addendum in August 2019.  (*See* Dkt. 3; Dkt. 4.)  Spottswood then filed certain documents indicating that he wanted to file an amended complaint, and the Court entered an order permitting him to do so.  (*See* Dkt. 11.)  Spottswood submitted the Amended Complaint on October 21, 2019, but later he also filed a motion asking this Court to refer him to the Federal Bar Association's Pro Se Project ("PSP").  (*See* Dkt. 14; Dkt. 21.)  In January 2020, this Court entered an order granting Spottswood's request for a PSP referral; noting certain problems in the Amended Complaint; and indicating that if Spottswood did not further amend his pleading, the Court would likely recommend the Amended Complaint's dismissal.  (*See* Dkt. 22.)  It appears that Spottswood has not been able to obtain a lawyer through the PSP, but he did file the present Second Amended Complaint, presumably in an attempt to address concerns raised by the Court's January 2020 Order.

various "Washington [C]ounty [J]ail [employees]" whose identities he does not know at this time. (*Id.* at 4.[6])

### A.    Allegations Concerning Peulen

On September 27, 2015, Peulen pulled over a vehicle registered to Spottswood while he was travelling to his sister's house. (*See id.* at 1-2.) Peulen apparently knew Spottswood from prior interactions. (*See id.* at 1.) Spottswood contends that when Peulen initially pulled him over, she did so because she suspected that he was driving a motor vehicle after authorities had revoked his driver's license. (*See id.* at 2.) At some point after she stopped Spottswood, he was brought to Peulen's squad car. (*See id.* at 1.) In a discussion in the car, Peulen allegedly told Spottswood that she was not going to arrest him for driving after revocation, and that she would drop him off at a nearby gas station.[7] (*See id.*)

Spottswood alleges that after this discussion, Peulen approached Spottswood's vehicle, saw his car keys (which included the jiggler keys), took them out of the car, and brought them back to the squad car. (*See id.*) Peulen allegedly told Spottswood that—notwithstanding their prior discussion—she was not going to let him go; instead, he

---

[6]    The Second Amended Complaint's caption does not name these employees as defendants. (*See* Dkt. 26 at 1.) But this Court must construe pro se filings liberally, *see, e.g.*, *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and the Second Amended Complaint plainly treats these unnamed individuals as people that Spottswood means to sue (*see, e.g.*, Dkt. 26 at 4). The Court therefore construes the Second Amended Complaint as naming these employees as defendants.

[7]    This drop-off was apparently necessary because Peulen could not let Spottswood drive the car away, given his license revocation.

would be "going to prison" for having jiggler keys. (*Id.*) Spottswood recounts

explaining that his car had recently been stolen, and that when he picked it up from the

Minneapolis Police Department's impound lot, the jiggler keys were on his keychain.

(*Id.*) Peulen "ignored" this explanation, and called another officer to the scene; they

searched Spottswood's vehicle, and also eventually took it to "the police impound to have

it inventoried." (*Id.*) Spottswood was taken to the WCJ and arrested for violating Minn.

Stat. § 609.59.[8] (*See id.*)

Peulen later drafted an "Initial Complaint Report"; Spottswood attaches an

annotated copy of this to the Second Amended Complaint. (*See* Dkt. 26-1 at 6-7.)

Spottswood alleges that this report falsely states that Peulen placed him under arrest, at

the scene of the stop, for driving after revocation.[9] (*See* Dkt. 26 at 2.) In Spottswood's

view, Peulen had told him that "he was free to go and that she was going to drop him off

at the gas station"—in other words, that he was *not* under arrest for driving after

revocation. (*Id.*) Spottswood's theory here is not entirely clear; the Court interprets him

as arguing that, because of this alleged agreement (i.e., that he would not be arrested for

---

[8]    Spottswood asserts that his interactions with Peulen during the stop and leading up
to his arrest were captured on video by squad-car video and/or "body cameras videos."
(*Id.* at 2.)

[9]    The report's key statements here read, "I advised [Spottswood] that I didn't
believe he would show up for court if I simply issued him a citation and that he had
obviously continued to drive the vehicle without a valid license. I told him that I would
be taking him to the jail to post bail." (Dkt. 26-1 6.) In the next paragraph, Peulen
describes a search of Spottswood's car being conducted "incident to arrest and tow."
(*Id.*)

driving after revocation), he was never legitimately put under arrest, and so any later searches of his vehicle violated his Fourth Amendment rights.[10]  (*See id.*[11])

Spottswood also contends that Peulen's report contains other falsehoods.  (*See, e.g.*, Dkt. 26-1 at 21.)  The report states that Peulen looked into Spottswood's criminal record and found "multiple previous convictions that would show that he is known to be a thief and burglar and that possession of the jiggler keys should constitute possession of burglary tools."  (*See id.* at 7.)  These past convictions purportedly helped Peulen decide to arrest Spottswood for illegally possessing burglary tools.  A table of prior

---

[10]    All of the references to constitutional amendments in Spottswood's Second Amended Complaint are to the U.S. Constitution; Spottswood nowhere suggests that he relies on any provisions of the Minnesota Constitution.

[11]    As noted above, Spottswood attaches a copy of Peulen's report to the Second Amended Complaint.  The Court obviously cannot assume the Report's truth at this stage of this case; for purposes of understanding Spottswood's allegations, however, it is worth noting the Report's alternative account of the stop.  The Report states that Peulen pulled Spottswood over on suspicion of driving after revocation.  (*See* Dkt. 26-1 at 6.)  After having Spottswood exit his vehicle and sit in her squad car, Peulen asked Spottswood if the vehicle was insured, and he said it was not.  (*See id.*)  She indicated to him that she "may be taking him to the jail to post bail," and began to arrange for a tow of the car.  (*Id.*)  Spottswood then asked if he could use his phone to arrange for a ride, and Peulen retrieved his phone and his wallet from his car.  (*See id.*)

Peulen states that she then reviewed Spottswood's driving record, and found "several suspensions for fail[ure] to appear or pay fines," and that in "several recent contacts with law enforcement," Spottswood had been seen driving a vehicle (purportedly without a valid license).  (*Id.*)  Peulen then "advised [Spottswood] that [she] didn't believe he would show up for court if [she] simply issued him a citation and that he had obviously continued to drive the vehicle without a valid license"; furthermore, she "told him that [she] would be taking him to the jail to post bail."  (*Id.*)  This constituted an arrest, and Peulen proceeded (with another officer's help) to search Spottswood's vehicle as an "inventory search of the vehicle incident to arrest and tow."  (*Id.*)  The report indicates that Peulen found the jiggler keys during this search.  (*See id.* at 6-7.)

convictions/charges in the report lists an August 2014 charge for possessing burglary tools (Peulen notes that prosecution for this charge was eventually declined), an October 2017 conviction for receiving stolen property, and an October 1997 conviction for possessing burglary tools. (*See id.*) Spottswood claims that these statements about his criminal history are false. (*See id.* at 22.)

The complaint's exhibits also include a "Statement of Probable Cause." (*Id.* at 8.) This appears to be the second page of a two-page document; the first page is not included. (*See id.*) For present purposes, the Court assumes that this is the probable-cause statement used to justify either Spottswood's arrest, charge, or one of the searches of his vehicle. The statement says that Spottswood was taking into custody after Peulen "review[ed] [his] criminal history" and "noted that [Spottswood] has had recent contact with law enforcement and several suspensions for failure to appear for Court." (*Id.*) It also says that Spottswood's criminal record "shows that he has been convicted of multiple counts of possession of burglary tools, receiving stolen property, motor vehicle thefts, and a third degree burglary." (*Id.*) As the Court understands Spottswood, he contends that these statements were false. (*See id.* at 2; Dkt. 26-1 at 21-22.) He states that he had not had any failures to appear in court. (*See id.* at 22.) He also asserts that he had no "criminal history to back . . . up" the probable-cause statement's assertions about his criminal record. (*Id.*)

Spottswood states that he is suing Peulen in her individual capacity. (*See* Dkt. 26 at 3.) It is unclear exactly what causes of action Spottswood means to press against her. In discussing her conduct, he specifically refers to the Fourth Amendment, but other than

7

that, he does not list any other causes of action.  (*See id.* at 2-3.)  As best as the Court can tell from reviewing the Second Amended Complaint, Spottswood appears to suggest that Peulen violated his Fourth Amendment right to be free from unreasonable searches and seizures, and also committed the Minnesota-law torts of malicious prosecution, abuse of process, and false imprisonment.[12]

### B.     Allegations Against Wedes

Spottswood alleges that Wedes reviewed "the police video and report," and knew that Peulen had made false statements in the report.[13]  (*Id.* at 2.)  Nevertheless, Spottswood maintains, Wedes "went along" and proceeded with an unjust prosecution,

---

[12]     Under Minnesota law, the elements of the malicious-prosecution tort are that (1) some action must have been brought "'without probable cause or reasonable belief that the [action's] plaintiff would ultimately prevail on the merits'"; (2) "'the action must be instituted and prosecuted with malicious intent'"; and (3) the action must have terminated "'in favor of the [action's] defendant.'"  *Leiendecker v. Asian Women United of Minnesota*, 895 N.W.2d 623, 634 (Minn. 2017) (quoting *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn. App. Ct. 1997)).  The elements of Minnesota's abuse-of-process tort are (1) "the existence of an ulterior purpose," and (2) "the act of using [a] process to accomplish a result not within the scope of the proceeding in which it was issued." *Bigelow v. Galway*, 281 N.W.2d 835, 837 (Minn. 1978) (citing cases).  The elements of the wrongful-imprisonment tort are "(1) words or acts intended to confine, (2) actual confinement, and (3) awareness by the plaintiff that he is confined."  *Blaz v. Molin Concrete Prod. Co.*, 244 N.W.2d 277, 279 (1976) (citing authorities); *see also Jones v. Walgreens Co.*, No. A11-1261, 2012 WL 1658895, at *2 (Minn. Ct. App. May 14, 2012) (quoting *Blaz*).  By simply noting these causes of action, the Court takes no position on whether the Second Amended Complaint properly alleges Peulen's liability under any of them.  As noted below, the Court is letting this action proceed against Peulen based on these causes of action, but once served with the Second Amended Complaint, Peulen may certainly elect to file a Rule 12 motion (or any other response permitted by the Federal Rules of Civil Procedure).

[13]     It is not clear whether "report" here refers to Peulen's "Initial Complaint Report," and "Statement of Probable Cause," or both.

including having warrants illegally issued for numerous phones associated with Spottswood. (*See id.*) The Second Amended Complaint also alleges that at Spottswood's trial, Wedes made numerous statements to the jury about relevant law that were misleading and/or contradictory. (*See id.*) Wedes also allegedly tried to mislead the jury about the elements of a § 609.59 violation. (*See id.* at 2-3.)

The Second Amended Complaint also makes certain allegations about a purportedly falsified citation; Spottswood appears to attribute this to Wedes. (*See id.* at 3.) He attaches to the Second Amended Complaint a marked-up copy of the Register of Actions in Case No. 82-CR-15-4099; this is undated, but has docket entries going through April 20, 2017. (*See* Dkt. 26-1 at 1, 5.) At the top of the document is a section for "Related Case Information," and this lists two related cases labelled as "82-CV-15-1 (Administrative)" and "82-CV-16-3 (Administrative)." (*See id.* at 1.) Spottswood suggests that the second of these related cases was added improperly. (*See* Dkt. 26 at 2.) He describes this as "an extra charge [that] was added to [his] file a year later" (i.e., a year after the initial § 609.59 charge). (*See* Dkt. 26-1 at 21.)

Spottswood states that he is suing Wedes in his individual capacity. (*See* Dkt. 26 at 3.) As with Peulen, however, the exact causes of action that Spottswood seeks to press against Wedes are not clear. In discussing the Wedes-related allegations, Spottswood specifically refers to the Fourth Amendment and the Eighth Amendment, and also refers to "due process." (*See id.* at 2.) The Court takes these references to imply that Spottswood means to bring claims against Wedes based on the Fourth Amendment, the Eighth Amendment, and the Fourteenth Amendment's Due Process Clause. Given its

review of Minnesota-law causes of action (*see* note 12 *supra*), the Court also construes the Second Amended Complaint as trying to press a state-law malicious-prosecution claim against Wedes.

### C.    Allegations Against Judge Jude

Spottswood alleges that Judge Jude made some sort of error when addressing Spottswood's bail during a period of pretrial detention. (*See* Dkt. 26 at 4.)  Judge Jude apparently entered an order requiring that Spottswood be held subject to a larger bail amount than should have been applied; Spottswood tried at least once to bring this issue to Judge Jude's attention, but that attempt apparently failed.  (*See id.*)

Spottswood also alleges that he filed a motion to dismiss with Judge Jude, in an attempt to prevent his state-court trial.  (*See id.*)  Spottswood states that Judge Jude denied this motion, and Spottswood apparently believes that this comprises a legal violation of some sort.  (*See id.*)

The Second Amended Complaint states that Spottswood is suing Judge Jude in his individual capacity.  (*See id.*)  It is not clear what causes of action Spottswood is trying to bring against Judge Jude.  Given the allegations discussed here, the Court will assume that Spottswood contends that Judge Jude's errors violated Spottswood's Fourteenth Amendment right to due process.[14]

---

[14]    As discussed more below, because Judge Jude is a judge, he has absolute judicial immunity.  This makes Spottswood's specific causes of action against Judge Jude somewhat less important.  Because Spottswood's allegations about Judge Jude's conduct plainly focus on conduct in his judicial role, in a case where he plainly had jurisdiction, *any* claim that Judge Jude violated Spottswood's federal constitutional rights runs into the same absolute-immunity barrier.

### D.    Allegations Against Judge Schurrer

The Second Amended Complaint's allegations against Judge Schurrer focus on two decisions Judge Schurrer made while handling Spottswood's case and trial.  (*See id.* at 4.)  First, Spottswood contends that Judge Schurrer erred by entering a judgment of *acquittal* in response to Spottswood's posttrial motion; instead, Spottswood alleges, Judge Schurrer's judgment should have reflected that Spottswood had been *exonerated*. (*See id.*; *cf.* Minn. Stat. § 590.11, subd. 1(b) (detailing eligibility requirements for compensation to individuals deemed "exonerated").)  Second, Spottswood contends that Judge Schurrer erred by not granting a motion to dismiss that Spottswood filed in advance of trial.  (*See* Dkt. 26 at 4.)

Spottswood is suing Judge Schurrer in his individual capacity.  (*See id.*)  As with Judge Jude, it is unclear what causes of action Spottswood is trying to bring against Judge Schurrer.  For present purposes, the Court will again assume that Spottswood contends that Judge Schurrer's alleged errors violated Spottswood's Fourteenth Amendment right to due process.[15]

### E.    Allegations Against Unnamed WCJ Employees

Spottswood also presents certain allegations about unnamed WCJ employees. (*See id.*)  According to Spottswood, after the trial court entered the judgment acquitting him, certain WCJ employees "lock[ed] [him] down" and required that he clean his cell

---

[15]    As with Judge Jude, Spottswood's exact constitutional claims against Judge Schurrer are not critical because Judge Schurrer, like Judge Jude, is a judge and so has absolute judicial immunity.  (*See* note 14 *supra*.)

before he could leave.  (*See id.*)  Spottswood claims that this conduct violated the

Thirteenth Amendment.  (*See id.*)  Spottswood does not specify whether he is suing these

individuals in their individual capacities or their official capacities, and so the Court

assumes that he means to sue them in their official capacities with Washington County.[16]

### F.    Request for Relief

With respect to relief, Spottswood seeks an unspecified amount of damages.  (*See*

*id.* at 3.)  His discussion here is not entirely clear, but it appears that he seeks

compensatory damages based on various items (e.g., his time spent in jail before trial, lost

work wages, money spent on bail) as well as "special damages," which the Court

construes as a request for punitive damages.  (*Id.*)

## II.    ANALYSIS

### A.    Screening Standards

Spottswood did not pay this action's filing fee; instead, he applied for (and this

Court granted) his request to proceed *in forma pauperis* ("IFP") in this action.  (*See, e.g.*,

Dkt. 22 at 14.)  Under 28 U.S.C. § 1915(e)(2)(B), in a case where a plaintiff is

proceeding IFP,

---

[16]    *Cf. Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which [he] is suing the defendant, we interpret the complaint as including only official capacity claims."); *Spencer v. Brott*, No. 17-CV-5035 (DSD/TNL), 2019 WL 6884775, at *4 (D. Minn. Nov. 21, 2019) (making same point (citing cases, including *Egerdahl*)), *report and recommendation adopted*, 2019 WL 6874657 (D. Minn. Dec. 17, 2019).  The Court has warned Spottswood about this exact issue (and/or the need to specify the capacity in which he is suing government employees) at least three times.  (*See* Dkt. 3 at 2; Dkt. 11 at 2; Dkt. 22 at 9-10.)

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . .
>
> > (B)     the action or appeal—
> >
> > > (i)      is frivolous or malicious;
> > >
> > > (ii)     fails to state a claim on which relief may be granted; or
> > >
> > > (iii)    seeks monetary relief against a defendant who is immune from such relief.

While § 1915(e)(2) speaks in terms of "the case," caselaw is clear that courts may also dismiss portions of a case that run afoul of § 1915(e)(2)(B). *See, e.g.*, *Bonczek v. Bd. of Trustees Nat'l Roofing Indus. Pension Plan*, No. 14-CV-3768 (JRT/LIB), 2015 WL 1897837, at *4 (D. Minn. Apr. 23, 2015) (dismissing portion of action under § 1915(e)(2)(B)); *Abduljabbar v. Minn. Dep't of Transp.*, No. 14-CV-3583 (ADM/JSM), 2014 WL 7476513, at *4 (D. Minn. Nov. 5, 2014) (same), *report and recommendation adopted*, 2015 WL 75255 (D. Minn. Jan. 6, 2015).

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the complaint's factual allegations and draw all reasonable inferences in Plaintiff's favor. *See, e.g.*, *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). The complaint's factual allegations need not be detailed, but must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing a complaint's sufficiency, a court may disregard legal conclusions that are couched as factual allegations. *See, e.g.*, *Ashcroft v.*

13

*Iqbal*, 556 U.S. 662, 678 (2009).  Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced.  *See, e.g.*, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

## B.    Claims Against Judge Jude and Judge Schurrer

The Court will begin its substantive analysis by reviewing Spottswood's claims against Judge Jude and Judge Schurrer.  Because Judge Jude and Judge Schurrer are both state-court judges, Spottswood's claims raise the issue of judicial immunity.

As discussed above, the Court construes the Second Amended Complaint as pressing claims against Judge Jude and Judge Schurrer for violations of Spottswood's Fourteenth Amendment right to due process.  Spottswood purports to bring these claims under 42 U.S.C. § 1983.  (*See* Dkt. 26 at 3.)  This is entirely appropriate, as the Fourteenth Amendment does not provide a standalone cause of action.  *See, e.g.*, *Lewis v. Minnesota*, No. 19-CV-3077 (NEB/DTS), 2020 WL 881712, at *1 (D. Minn. Feb. 24, 2020) ("[T]he Constitution does not provide a standalone right to sue . . . ." (citing *Quality Refrigerated Servs., Inc. v. City of Spencer*, 908 F. Supp. 1471, 1487 n.9 (N.D. Iowa 1995))).

But "[a] judge is immune from suit, including suits brought under [§ 1983] to recover for alleged deprivations of civil rights, in all but two narrow sets of circumstances."  *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012) (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)).  These exceptions are that (1) "'a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity'"; and (2) "'a judge is not immune for actions, though judicial in nature, taken in

14

the complete absence of all jurisdiction.'" *Id.* (quoting *Mireles*, 502 U.S. at 11-12).  For the first exception, "'[a]n act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity.'" *Id.* (quoting *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982)).  For the second, courts are to construe a judge's jurisdiction broadly, such that "'[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (brackets in *Schottel*)).

In this action, Spottswood's allegations about Judge Jude and Judge Schurrer straightforwardly concern their judicial actions—namely, actions taken in a state-court action against Spottswood.  And the Second Amended Complaint nowhere suggests that either judge's relevant actions were "taken in the complete absence of all jurisdiction." Judicial immunity thus applies to Judge Jude and Judge Schurrer.  As a result, the Court recommends that Spottswood's claims against these defendants be dismissed with prejudice, and that both defendants be dismissed from this action.

### C.    Claims Against Wedes

The Court next turns to the Second Amended Complaint's claims against Wedes. Recall that the Court construes Spottswood as trying to press four claims against Wedes: violation of Spottswood's Fourth Amendment right to be free from unreasonable searches and seizures, violation of Spottswood's Eighth Amendment right to be free from cruel or

unusual punishment, violation of Spottswood's right to due process under the Fourteenth Amendment, and malicious prosecution in violation of Minnesota law.

Because Wedes is a county prosecutor, this Court must address the issue of prosecutorial immunity.  With respect to claims under § 1983—as relevant here, all of Spottswood's constitutional claims—prosecutors have an absolute immunity from suit for "acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [a prosecutor's] role as an advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Hartmann v. Schauer*, No. 16-CV-3970 (PJS/BRT), 2017 WL 9249433, at *5 (D. Minn. July 5, 2017) (citing cases), *report and recommendation adopted*, 2017 WL 3575851 (D. Minn. Aug. 18, 2017).  The U.S. Supreme Court has indicated that such acts specifically include "the professional evaluation of the evidence assembled by the police." *Buckley*, 509 U.S. at 273. Furthermore, similar absolute immunity applies to actions involving "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *see also Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018) (quoting *Imbler*).

To be sure, exceptions to this absolute immunity apply where a prosecutor acts in an "investigatory" or "administrative" capacity.  *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250, 262 n.8 (2006) (citing cases); *Woodworth*, 891 F.3d at 1089 (quoting *Buckley*, 509 U.S. at 273–74).  But almost all of Spottswood's allegations concerning Wedes relate to his evaluation of evidence presented to him by the police or his conduct during

16

Spottswood's trial.[17]  (*See* Dkt. 26 at 2-3.)  Absolute immunity thus applies to Wedes.

The Court therefore recommends dismissing Spottswood's § 1983 claims against Wedes

with prejudice.[18]

This leaves the state-law malicious-prosecution claim.  Minnesota law has its own

doctrine of absolute prosecutorial immunity, under which "'public prosecutors, when

acting within the scope of their duties by filing and maintaining criminal charges, are

absolutely immune from civil liability.'"  *Stresemann v. Jesson*, 868 N.W.2d 32, 34-35

(Minn. 2015) (quoting *Brown v. Dayton Hudson Corp.*, 314 N.W.2d 210, 214 (Minn.

---

[17]    The Court says "almost all" here because Spottswood's allegations about a
purportedly falsified citation are ambiguous.  Spottswood alleges that Wedes had a
citation, listed as "Administrative," added to the docket for Case No. 82-CR-15-4099 as
an "extra charge."  (See Section I.B supra.)  The Court is unsure whether Wedes was
actually responsible for adding this citation to the case docket, and whether the new
citation actually reflected new charges filed against Spottswood.  But assuming that
Spottswood's citation allegations are true, then what Spottswood is complaining about
here is a prosecutor's charging decision.  Such decisions plainly fall within a prosecutor's
absolute immunity, so Spottswood cannot bring a claim against Wedes based on this
alleged conduct.

[18]    With one exception.  Spottswood claims, with no further detail, that Wedes
"issued warrants for Mr. Spottswood's phones illegally."  (*See* Dkt. 26 at 2.)  To the
extent this alleges that Wedes issued these warrants in an investigatory capacity, absolute
immunity would not apply.  The Court nevertheless recommends dismissing this claim
without prejudice, because Spottswood's standalone allegation here fails to state a claim
for which this Court can grant relief.  Spottswood provides no details for this claim of
illegal conduct; he just asserts, with nothing more, that Wedes's issuing of certain
warrants was illegal.  This is simply a bare legal conclusion presented as a factual
assertion.  As a result, the Court does not have to—and will not here—simply accept this
assertion's truth for purposes of reviewing the Complaint.  *See, e.g.*, *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare
recitals of the elements of a cause of action, supported by mere conclusory statements, do
not suffice." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Court
therefore recommends dismissing this claim against Wedes without prejudice.

1981)).  The Second Amended Complaint leaves no question that Spottswood's
allegations concerning alleged malicious prosecution concern Wedes's conduct in "filing
and maintaining" the criminal charge against Spottswood.  The Court therefore concludes
that Minnesota's prosecutorial-immunity doctrine bars Spottswood's malicious-
prosecution claim against Wedes, and that this claim should be dismissed with prejudice.
As this was the last claim remaining against Wedes, the Court also recommends
dismissing Wedes from this action.

      **D.**     **Claim Against Unnamed WCJ Employees**

The Court next turns to Spottswood's official-capacity claim against unnamed
WCJ staff.  As discussed above, Spottswood's contention here is that various WCJ
employees violated his Thirteenth Amendment rights by requiring him to clean his cell—
after his acquittal, but before letting him leave.

As with Spottswood's other constitutional claims, the Court construes his
Thirteenth Amendment claim as brought under § 1983.  A § 1983 official-capacity claim
against county employees is functionally equivalent to a claim against the county itself.
*See, e.g.*, *Thiel v. Korte*, 954 F.3d 1125, 1129 (8th Cir. 2020) (citing *Miller v. City of St.
Paul*, 823 F.3d 503, 506 (8th Cir. 2016)); *Goodman v. Dakota Cty.*, No. 19-CV-1710
(PJS/BRT), 2019 WL 6682164, at *3 (D. Minn. Dec. 6, 2019) (citing *Miller*).  The Court
thus assesses Spottswood's Thirteenth Amendment claim as a claim against Washington
County.

Under § 1983, a local government (such as a county government) is subject to
§ 1983 liability only "if the governmental body *itself* 'subjects' a person to a deprivation

of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692) (emphasis added); *see also Al-Kadi v. Ramsey Cty.*, No. 16-CV-2642 (JRT/TNL), 2019 WL 2448648, at *15 (D. Minn. June 12, 2019) (quoting *Connick*).  For a governmental entity to *itself* subject someone to a deprivation, it is not enough that the entity's employees do the depriving: "local governments are responsible only for their *own* illegal acts," and "are not vicariously liable under § 1983 for their employees' actions." *See, e.g.*, *Connick*, 563 U.S. at 60 (citing cases (internal quotation marks omitted)); *see also LaBeau v. Sorenson*, No. 18-CV-0651 (NEB/LIB), 2019 WL 7284109, at *5 (D. Minn. Dec. 27, 2019) (quoting *Connick*).

To allege local-government § 1983 liability, plaintiffs must allege that "'action pursuant to official municipal policy'" caused the relevant injury.  *Connick*, 563 U.S. at 60–61 (quoting *Monell*, 436 U.S. at 691); *see also Brenner v. Asfeld*, No. 18-CV-2383 (NEB/ECW), 2019 WL 2358451, at *7 (D. Minn. June 4, 2019) (making same point (quoting *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998))).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citing cases); *see also Al-Kadi*, 2019 WL 2448648, at *15 (quoting *Connick*).  As a general matter, this requires a plaintiff to plead that his relevant injury was caused by a local government's "policy or custom."  *See, e.g.*, *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 36 (2010) (citing *Monell*, 436 U.S. at 694); *Minnesota*

*RFL Republican Farmer Labor Caucus v. Freeman*, No. 19-CV-1949 (ECT/DTS), 2020
WL 1333154, at *2 (D. Minn. Mar. 23, 2020) (quoting *Humphries*).

There is no shortage of case law explaining how to plead that a governmental
policy or custom caused an injury. But the Court need not explore those cases here, for
the Second Amended Complaint nowhere alleges that the WCJ employees' relevant
conduct was done pursuant to any sort of policy or custom. Spottswood therefore fails to
state an official-capacity claim against the WCJ employees. The Court thus recommends
dismissing this claim without prejudice, and recommends dismissing these defendants
from the action.[19]

### E.      Claims Against Peulen

Based on its review of the Second Amended Complaint, the Court believes that
Spottswood intends to bring four claims against Peulen: a § 1983 claim that she violated

---

[19]      As discussed above, the Court has construed Spottswood as suing the WCJ
employees in their official capacities with Washington County; he did not do so
explicitly. For the sake of completeness, however, the Court observes that even if one
assumes that Spottswood meant to sue these defendants in their individual capacities, his
Thirteenth Amendment allegations likely would fail to state a claim. The Thirteenth
Amendment states in relevant part that "[n]either slavery nor involuntary servitude . . .
shall exist within the United States . . . ." U.S. Const. amend. XIII, § 1. This reference to
"slavery" is straightforward: "The primary purpose of the Amendment was to abolish the
institution of African slavery as it had existed in the United States at the time of the Civil
War . . . ." *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (citing *Butler v. Perry*,
240 U.S. 328, 332 (1916)). As for "involuntary servitude," the U.S. Supreme Court has
indicated that the term "was intended to extend 'to cover those forms of compulsory labor
akin to African slavery which in practical operation would tend to produce like
undesirable results.'" *Id.* (quoting *Butler*, 240 U.S. at 332). Under these understandings,
the Court doubts that Spottswood's allegations amount to the sort of conduct that the
Thirteenth Amendment covers. For present purposes, however, the Court need not—and
so does not—resolve the issue.

his Fourth Amendment right to be free from unreasonable searches and seizures; and state-law claims for malicious prosecution, abuse of process, and false imprisonment. At present, the Court will not dismiss any of these claims, at least for purposes of screening under 28 U.S.C. § 1915(e)(2). Unlike Jude and Schurrer, Peulen does not qualify for any sort of judicial immunity; unlike Wedes, she does not qualify for any sort of prosecutorial immunity; and unlike the unnamed WCJ employees, Spottswood's claims against Peulen are expressly individual-capacity claims.

As a result, the Court orders Spottswood to provide service information for Peulen so that this case may proceed. Once properly served with the Second Amended Complaint, Peulen may respond to it in any way consistent with the Federal Rules of Civil Procedure.

### F.    Claims Against Washington County

The last remaining defendant to consider is Washington County. The Second Amended Complaint lacks specific allegations against the County itself, making the nature of Spottswood's claim against the County unclear. (*See* Dkt. 26 at 1-4.) Construing the Second Amended Complaint liberally—and accounting for the discussion above recommending dismissal of this action's claims against Judge Jude, Judge Schurrer, Wedes, and the unnamed WCJ employees—the Court construes Spottswood's remaining potential claim against the County being that it is vicariously liable for Peulen's conduct.

This raises two distinct questions. First, there is the question of Washington County's vicarious liability to Spottswood based on Peulen's allegedly unconstitutional

21

conduct.  Because Spottswood brings his constitutional claims against Peulen under

§ 1983, the discussion above of vicarious liability under § 1983 applies here as well.

Washington County cannot be held liable under § 1983 merely for Peulen's

unconstitutional conduct, and Spottswood does not attribute that conduct to any

Washington County policy or custom.  The Court thus concludes that, to the extent

Spottswood seeks to hold Washington County vicariously liable for any violation of his

constitutional rights, those claims should be dismissed without prejudice.

Second, there is the distinct question of Washington County's vicarious liability

based on Peulen's conduct that allegedly violated Minnesota state law.  Minnesota law

specifically provides that, as a general matter, "every municipality is subject to liability

for its torts and those of its officers, employees and agents acting within the scope of their

employment or duties . . . ."  Minn. Stat. § 466.02.  There are various exceptions to this

general rule.  *See, e.g.*, *id.* § 466.03.  For present purposes, however, the Court will not

decide at § 1915(e)(2) screening the question of Washington County's vicarious liability

to Spottswood under Minnesota state law.

Washington County will thus remain as a defendant going forward, but only based

on its potential vicarious liability under Minnesota state law.  As with Peulen, once the

County is properly served with the Second Amended Complaint, the County may respond

to it in any way consistent with the Federal Rules of Civil Procedure.

### G.    Summary

For purposes of clarity as this case proceeds, the Court will briefly summarize its recommendations and explain what claims the Court recommends remain in this action. The Court recommends that Spottswood's claims against Defendants Judge Jude, Judge Schurrer, Wedes, and the unnamed WCJ employees be dismissed from this action. On the other hand, Spottswood's claims against Defendant Peulen—his Fourth Amendment claim, as well as his state-law claims for malicious prosecution, abuse of process, and wrongful imprisonment—will proceed. With respect to Washington County, the Court recommends the dismissal of any possible § 1983 claim based on the County's vicarious liability for Peulen's allegedly unconstitutional conduct. Washington County will remain in the action at this stage solely for purposes of assessing its potential vicarious liability based on Peulen's alleged state-law violations.

### RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.    The claims in Plaintiff Shawn Clarke Spottswood's Second Amended Complaint (Dkt. 14) aimed at Defendants Judge Tad Jude and Judge Gary Schurrer be **DISMISSED** with prejudice, and Judge Jude and Judge Schurrer be **DISMISSED** from this action.

2.    With respect to Defendant Tom Wedes, (1) Spottswood's § 1983 claim based on Wedes issuing warrants for Spottswood's phones be **DISMISSED** without prejudice; (2) Spottswood's remaining claims be **DISMISSED** with prejudice; and (3) Wedes be **DISMISSED** from this action.

3.    The Second Amended Complaint's claims against unknown "Washington County Jail employees" be **DISMISSED** without prejudice, and those defendants **DISMISSED** from this action.

4.    The Second Amended Complaint's claims based on Defendant Washington County's vicarious liability for the allegedly unconstitutional conduct of Defendant Sarah Peulen be **DISMISSED** without prejudice.

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Consistent with District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations on or before **June 12, 2020**. A party may respond to those objections on or before **June 19, 2020**. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.    Spottswood must submit a properly completed Marshal Service Form (Form USM-285) for Defendant Sarah Peulen. If Spottswood does not complete and return the Marshal Service Forms within 30 days of this Order's date, the Court will recommend that this matter be dismissed without prejudice for failure to prosecute. Marshal Service Forms will be provided to Spottswood by the Court.

2.    After the return of the completed Marshal Service Form, the Clerk of Court is directed to seek waiver of service from Peulen (in her individual capacity), consistent with Rule 4(d) of the Federal Rules of Civil Procedure.

3.    If Peulen fails without good cause to sign and return a waiver within 30 days of the date that the waiver is mailed, the Court will impose upon her the expenses later incurred in effecting service of process. Absent a showing of good cause, reimbursement of the costs of service is mandatory and will be imposed in all cases in which a

defendant does not sign and return a waiver of service form.  *See* Fed. R. Civ. P. 4(d)(2)

4.    The U.S. Marshals Service is directed to effect service of process on Defendant Washington County consistent with Rule 4(j) of the Federal Rules of Civil Procedure.


Dated: June 10, 2020                    <u>*s/Elizabeth Cowan Wright*</u>
                                        ELIZABETH COWAN WRIGHT
                                        United States Magistrate Judge