## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

SHAWN CLARKE SPOTTSWOOD,                    Case No. 19-cv-1331 (MJD/ECW)

        Plaintiff,

v.                                          **REPORT AND RECOMMENDATION**

WASHINGTON COUNTY,
MINNESOTA; and SARAH PEULEN,

        Defendants.

---

This matter comes before the Court on Defendants Washington County and

Deputy Sarah Peulen's Motion for Summary Judgment (Dkt. 71.)  The case has been

referred to the undersigned United States Magistrate Judge for a report and

recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the following

reasons, the Court recommends granting summary judgment to Defendants.

## I.     FACTUAL BACKGROUND

### A.    Traffic Stop and Arrest

According to the Initial Complaint Report, on September 27, 2015, Defendant

Sarah Peulen ("Deputy Peulen"), a police deputy working for Washington County, was

patrolling Denmark Township in a fully marked Washington County squad car.  (Dkt. 74-

1 at 3.)[1]  During her patrol, Deputy Peulen observed a tan Lincoln automobile with very

---

[1]    Plaintiff also relies on the Initial Complaint Report as part of his opposition.  (*See* Dkt. 86 at 5-7.)

dark tint in the windows and Minnesota plates.  (*Id.*)  Deputy Peulen had contact with this vehicle several months earlier and ran the plate to confirm that it was the same vehicle and registered owner.  (*Id.*)  After running the plate, Deputy Peulen discovered that the registered owner was Plaintiff Shawn Clarke Spottswood ("Spottswood" or "Plaintiff") and that his driver's status had been revoked.  (*Id.*)  Spottswood conceded in a motion to dismiss the subsequent charges against him in state court that he did not have a valid driver's license, stating that "the officer knew I didn't have license and pulled me over." (Dkt. 74-3 at 19; Dkt. 86 at 10.)

Deputy Peulen tried to stop the vehicle, which eventually stopped in the driveway of XXXX Neal Avenue.  (Dkt. 74-1 at 3.)  After discussing why Spottswood was driving without a valid license, a pat-down search, and the discovery that there was no insurance on the vehicle, Deputy Peulen advised Plaintiff that she decided to start a tow on the vehicle and advised Spottswood that she may be taking him to jail to post bail.  Plaintiff asked to use his phone to find a ride, but it was not working so, he asked Deputy Peulen for a ride.  (*Id.*)

After reviewing Spottswood's driving record, Deputy Peulen discovered several suspensions for failure to appear or pay fines, and also checked in-house records showing recent contacts with law enforcement in which he had been driving the vehicle.  (*Id.*) Deputy Peulen told Plaintiff that she did not believe he would show up for court if she simply issued him a citation and that he had obviously continued to drive the vehicle without a valid license, so she would be taking him to jail.  (*Id.*)

**B.**     **Washington County Policy**

The Washington County Sheriff's Office Policy provides in relevant part as

follows:

### 502.3.1 TOWING AUTHORIZED

(a) When it is necessary to safeguard a vehicle due to the inability of the owner or operator to take the required action.

(b) When a vehicle is being held as evidence in connection with an investigation.

(c) When a vehicle cannot be left on a street, public roadway or other designated area lawfully. i.e. no insurance, suspended/revoked registration (registration must be expired for excess of 90 days to be impounded), unsafe equipment, etc. Deputies shall document the reason and need for impoundments in an offense report.

(d) When it is otherwise necessary to store a motor vehicle. This would include situations involving the recovery of stolen or abandoned vehicles, seized vehicles/property and the removal of vehicles obstructing traffic in violation of state or local regulations.

(e) All other situations deemed appropriate by the Office.

### 502.4 TOWING AT ARREST SCENES

Whenever a person in charge or in control of a vehicle is arrested, it is the policy of this office to provide reasonable safekeeping by towing the arrestee's vehicle subject to the exceptions described below. However, a vehicle shall be towed whenever it is needed for the furtherance of an investigation or prosecution of the case, or when the community caretaker doctrine would reasonably suggest that the vehicle should be towed. For example, the vehicle would present a traffic hazard if it were not removed, or the vehicle is located in a high-crime area and is susceptible to theft or damage if left at the scene.

The following are examples of situations where consideration should be given to leaving a vehicle at the scene in lieu of towing, provided the vehicle can be lawfully parked and left in a reasonably secured and safe condition:

- Traffic-related warrant arrest.

- Situations where the vehicle was not used to further the offense for which the occupant was arrested nor may be subject to forfeiture proceedings.

- Whenever the vehicle otherwise does not need to be stored and the owner requests that it be left at the scene.

In such cases, the handling employee shall note in the report that the owner was informed that the Office will not be responsible for theft or damages.

**602.5 VEHICLE INVENTORY**

All property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form. This includes the trunk and any compartments or containers, even if they are closed and/or locked. Members conducting inventory searches should be as thorough and accurate as practicable in preparing an itemized inventory. These inventory procedures are for the purpose of protecting an owner's property while the owner is in sheriff's custody, to provide for the safety of deputies and the public.

(Dkt. 74-3.)

**C.    Inventory Search and Seizure of Evidence**

During an inventory search of the vehicle, incident to arrest and tow, Deputy Peulen located a set of keys on the driver's side floor, sitting near where the driver's right heel would have been, as if someone placed them on the floor between the center console and the driver's seat. (Dkt. 74-1 at 3.) The keys included a copied vehicle key, a key fob, and a set of jiggler or bump keys, which are generic keys that are used to unlock motor vehicles. (*Id.*) Deputy Peulen also discovered three cell phones. (*Id.* at 4.)

Spottswood told Deputy Peulen that the jiggler keys did not belong to him. (*Id.* at 4.) Specifically, Spottswood claimed that his vehicle had been stolen and when he got the vehicle back from the impound lot, the copied vehicle key and jiggler keys were in the vehicle. (*Id.*)

4

At some unspecified point in time, Deputy Peulen also checked Spottswood's criminal history, which showed multiple convictions for motor vehicle theft, burglary, and possession of burglary tools.  (*Id.* at 4.)

Deputy Peulen noted in her Initial Complaint Report that she transported Spottswood to the Washington County Jail, where he was being held pending judicial review of charges for felony possession of burglary tools, driving after revocation, and no insurance.  (*Id.*)  According to Spottswood, he was ultimately charged with not having insurance and he pleaded guilty to this offense.  (Dkt. 86 at 6.)

## D.    Criminal Complaint

On September 28, 2015, a Criminal Complaint was brought against Spottswood for one Count of Possession of Burglary or Theft Tools in violation of Minnesota Statute § 609.59, based on the discovery of the set of jiggler keys in the vehicle and on Spottswood's criminal history, which showed convictions on multiple counts of possession of burglary tools, receiving stolen property, motor vehicle thefts, and a third-degree burglary.  (Dkt. 74-3 at 6-7.)  The basis for probable cause was the information provided by Deputy Peulen and the Criminal Complaint was signed by Sargent Andrew Elliot Ellickson and Assistant Count Attorney Thomas Wedes.  (Dkt. 74-3 at 8.)  On the same date, Washington County State District Judge Richard Ilkka found probable cause existed to support Spottswood's arrest and ordered him detained.  (*Id.* at 9.)

## E.    Trial

There is no evidence in the record that Spottswood sought to suppress evidence of the inventory search of Spottswood's vehicle or the seizure of the jiggler keys.  The

criminal case then proceeded to a jury trial. (Dkt. 74-2.) At trial, Deputy Peulen, consistent with her previous reports, testified that during her patrol she recognized a vehicle that she had previous contact with and ran the plate, which showed "the name of the registered owner and also found that his driving status was listed as revoked, which caused me to initiate a traffic stop on the vehicle." (*Id.* at 38-39.) Deputy Peulen also testified that after she turned on her emergency lights, the vehicle turned into the driveway of a farm on Neal Avenue and came to a stop. (*Id.* at 39.) Deputy Peulen also testified that Spottswood acknowledged that he did not have a valid driver's license. (*Id.*)

Deputy Peulen further testified that she initially placed Spottswood in the back of her vehicle to contain him for safety reasons until she figured out the situation. (*Id.* at 41.) He was not yet under arrest. (*Id.*) At some point after, Deputy Peulen decided to arrest Spottswood as she conducted an inventory search of the vehicle pursuant to Washington County policy for the following reasons:

> When a vehicle is being towed, the concern is that there may be items of value in the vehicle that we don't necessarily want to leave in there, so it would sit in a tow yard. Tow yards are generally fenced but the concern is if it's somebody's personal property that is of value, we don't want to leave it in the vehicle for someone else to have access. So we do an inventory to make sure there are no items of value. If there are items of value, we remove them or bring them with to the jail to bring into their property or place them into our evidence room to be returned to the owner.

(*Id.* at 42.) Deputy Peulen also testified that as part of such a search, other items of interests can be discovered, and in this case, she discovered the jiggler keys in the floorboard area of the passenger side of the vehicle. (*Id.* at 42-43.) The inventory list also included the cells phones discovered in the vehicle. (*Id.* at 51-52.) Based on her

investigation and experience, she testified that jiggler keys are not illegal to own, but that

such keys are used to open vehicle doors of various makes and models of vehicles and are

either used by locksmiths or persons intending to break into vehicles or steal vehicles.

(*Id.* at 47-48.)

There was also testimony at trial that Spottswood had reported the vehicle stolen

and that it had been recovered a week later in Minneapolis. (*Id.* at 54-55.) The vehicle

report stated that the key to the vehicle was left inside but it did not say anything about

jiggler keys. (*Id.*)

The jury ultimately found Spottswood guilty of the charge of Possession of Theft

Tools. (*Id.* at 100.)

## F.    Judgment of Acquittal

Spottswood brought a motion for judgment of acquittal. (Dkt. 74-3 at 21.) On

April 10, 2017, Washington County District Judge Gary Schurrer granted Spottswood's

motion for judgment of acquittal and vacated the jury verdict on the basis that the

element of intent was not established by the State for the following reasons:

> The court finds that the element of intent was not established by the State.
> **Defendant was stopped for a driver's license violation at approximately**
> **10:47 a.m. The jiggler keys, which are not illegal to possess, were found**
> **on the floor of the vehicle pursuant to an inventory search after the**
> **defendant was arrested for the license violation**. Defendant was
> cooperative with the arresting officer and made no statements in which he
> expressed an intent to use the jiggler keys for an improper purpose. This is
> not a situation where, for example, the Defendant was found in possession of
> the keys late at night in close proximity to a vehicle which he did not own,
> which might raise an inference of intent to commit a theft. No such
> circumstances exist in this case. Furthermore, no testimony was presented
> which would have ruled out the possibility, however unlikely, that Defendant
> was a locksmith or a tow truck operator. During their deliberations, the jury

asked about the occupation of the Defendant and were told that they could only consider the information that had been presented to them at trial. The jury's finding of guilt based on the evidence they were presented rendered the legal possession of the jiggler keys illegal. The court finds that there is insufficient evidence to establish the element of intent as required by the statute.

The court did allow into evidence a prior conviction for motor vehicle theft from 2003, pursuant to *State v. Spriegel*, 139 N.W. 2d 167 (Minn. 1965). The jury was instructed that they could not convict the Defendant for the current charge on the basis of that occurrence. The court finds that the *Spriegl* incident, which occurred twelve years before the charges in this case, cannot alone establish beyond a reasonable doubt that the Defendant intended to commit the crime of theft when he was stopped by Deputy Peulen. The lack of evidence regarding intent, an essential element of the crime, justifies the rare granting of the Defendant's motion for judgment of acquittal.

(*Id.* at 25-26 (emphasis added).)

The State filed a notice of appeal (and Spottswood a cross-appeal), but later voluntarily dismissed the appeal before any briefing occurred. (*See* Dkt. 74-3.)

## II.    PROCEDURAL BACKGROUND

In this matter, Spottswood first filed his original Complaint on May 20, 2019. (Dkt. 1.) After this Court ordered Spottswood to clarify who he was suing in his Complaint and in what capacity (Dkts. 3, 11), Spottswood ultimately filed an Amended Complaint and then the operative Second Amended Complaint on March 20, 2020. (Dkt. 26.) The Court issued an Order and Report and Recommendation recommending dismissing all Defendants and claims, except for the claims against Deputy Peulen in her individual capacity and the claims against Defendant Washington County for potentially vicarious liability, as follows:

Based on its review of the Second Amended Complaint, the Court believes that Spottswood intends to bring four claims against Peulen: a § 1983 claim

that she violated his Fourth Amendment right to be free from unreasonable searches and seizures; and state-law claims for malicious prosecution, abuse of process, and false imprisonment. At present, the Court will not dismiss any of these claims, at least for purposes of screening under 28 U.S.C. § 1915(e)(2). Unlike Jude and Schurrer, Peulen does not qualify for any sort of judicial immunity; unlike Wedes, she does not qualify for any sort of prosecutorial immunity; and unlike the unnamed WCJ employees, Spottswood's claims against Peulen are expressly individual-capacity claims.

As a result, the Court orders Spottswood to provide service information for Peulen so that this case may proceed.

* * *

Second, there is the distinct question of Washington County's vicarious liability based on Peulen's conduct that allegedly violated Minnesota state law. Minnesota law specifically provides that, as a general matter, "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties . . . ." Minn. Stat. § 466.02. There are various exceptions to this general rule. *See*, *e.g.*, *id.* § 466.03. For present purposes, however, the Court will not decide at § 1915(e)(2) screening the question of Washington County's vicarious liability to Spottswood under Minnesota state law.

Washington County will thus remain as a defendant going forward, but only based on its potential vicarious liability under Minnesota state law.

(Dkt. 27 at 21-22.) United States District Judge Michael J. Davis adopted the Report and Recommendation. (Dkt. 35.)

As such, the Court will only address the claims against Deputy Peulen for an alleged violation of 42 U.S.C. § 1983 regarding Plaintiff's right to be free from unreasonable searches and seizures related to his September 2015 arrest and search of his vehicle, the state-law claims for malicious prosecution, abuse of process, and false imprisonment; and the vicarious liability claims against Washington County based on Deputy Peulen's alleged state-law violations.

9

### III.    <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  For a dispute about a material fact to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby*, 477 U.S. 248 (1986).  In its review of the facts, the Court must consider the evidence in the light most favorable to the party opposing summary judgment.  *See Kneibert v. Thomson Newspapers, Michigan, Inc.*, 129 F.3d 444, 451 (8th Cir. 1997).

When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial."  *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).  "In evaluating the evidence at the summary judgment stage, we consider only those responses that are supported by admissible evidence."  *Duluth News-Tribune v. Mesabi Publ'g Co.,* 84 F.3d 1093, 1098 (8th Cir. 1996); *see also JRT, Inc. v. TCBY Sys., Inc.*, 52 F.3d 734, 737 (8th Cir. 1995) ("[A] successful summary judgment defense requires more than argument or

re-allegation; [the party] must demonstrate that at trial it may be able to put on admissible evidence proving its allegations.").  Indeed, Rule 56(c) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated" and a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  *See* Fed. R. Civ. P. 56(c)(2), (4).

When ruling on a motion for summary judgment, the Court is not required to adopt the plaintiff's version of the facts when those facts are "so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them."  *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  "A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor' without resort to 'speculation, conjecture, or fantasy.'"  *Id.* at 790-91 (citations and internal quotation omitted).  When considering a motion to dismiss or for summary judgment, pleadings submitted by *pro se* litigants are held to less stringent standards than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  Nevertheless, claims of even a *pro se* plaintiff cannot survive a motion for summary judgment unless the plaintiff has set forth specific facts demonstrating that there is a genuine issue for trial.  *See Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987) ("Although Quam is entitled to the benefit of a liberal

construction of his pleadings because of his pro se status, Federal Rule of Civil Procedure 56 remains applicable to Quam's lawsuit.").

## IV.    <u>ANALYSIS</u>

### A.    **Federal Claims Against Deputy Peulen**

As stated previously, Spottswood's claim against Deputy Peulen alleges a violation of 42 U.S.C. § 1983 regarding his right to be free from unreasonable searches and seizures arising from his September 2015 arrest and search of his vehicle. Defendants argue that Deputy Peulen is entitled to qualified immunity, with an emphasis on Spottswood's failure to provide any disputed evidence showing that he was improperly seized or that his vehicle was improperly searched for the purposes of the Fourth Amendment.  (Dkt. 73 at 9-16.)

> The Supreme Court has laid out qualified immunity's parameters as follows:
>
> Under our precedents, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing' " is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law."
>
> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority.'" It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." This requires a high "degree of specificity." We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established."

*D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (internal citations omitted). A government official is entitled to qualified immunity **unless "both of these questions are answered affirmatively**." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (cleaned up) (emphasis added). "To defeat a motion for summary judgment based on qualified immunity, the plaintiff must put forth facts showing that the officer's conduct violated a constitutional right, and that the right was clearly established at the time of the alleged misconduct." *Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018) (citation omitted). "The district court has discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Given this standard, the Court will proceed with determining whether Deputy Peulen is entitled to qualified immunity.

### 1.    The Stop and Arrest of Spottswood

Defendants argue that based on the undisputed facts, Deputy Peulen did not violate Spottswood's Fourth Amendment right, as she had probable cause to stop Spottswood based on a traffic violation and probable cause to ultimately arrest him for

driving with a revoked license.  (Dkt. 73 at 10-12.)  In his opposition memorandum,[2]

Spottswood argues that Deputy Peulen told him that he was free to leave and would drop

him off at a gas station, but that upon retrieving his phone from the vehicle she found the

jiggler keys, and arrested him for legally owning jiggler keys without probable cause and

that she had no probable cause or ability to arrest him only for a misdemeanor traffic

violation, one for which he was never charged by Washington County.  (Dkt. 85 at 11-

14.)

The Fourth Amendment guarantees the "right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S.

Const. amend. IV.  A traffic stop constitutes a seizure for Fourth Amendment purposes.

*Whren v. United States*, 517 U.S. 806, 809-10 (1996).  "To constitute a reasonable

seizure, a traffic stop must be supported by, at a minimum, 'a reasonable, articulable

suspicion that criminal activity' is occurring."  *United States v. Frasher*, 632 F.3d 450,

453 (8th Cir. 2011) (quoting *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001)).

"A traffic violation, however minor, provides probable cause sufficient to satisfy the

constitutional reasonableness requirement."  *Id.* (citing *United States v. Ehrmann*, 421

F.3d 774, 780 (8th Cir. 2005)).  "A traffic stop generally must be supported by at least a

reasonable, articulable suspicion that criminal activity has occurred or is occurring, and a

---

[2]    The Court notes that Plaintiff also filed an earlier objection on August 27, 2021,
claiming in large part that he had not seen the summary judgment materials and did not
have sufficient time to respond to the Motion.  (Dkt. 81.)  Spottswood did concede that he
had access to the documents as of August 19, 2021, although he had not yet read them.
(Dkt. 79.)  Regardless, he was ultimately able to file a substantive opposition and exhibits
(Dkts. 85-86) on October 4, 2021, which the Court has considered.

traffic violation—however minor—creates probable cause to stop the driver of a vehicle.'" *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021) (marks and citations omitted). As part of this analysis, "the determinative question is not whether a traffic violation had actually occurred, but whether an objectively reasonable police officer could have formed a reasonable suspicion that the driver was committing a code violation." *Id.* (cleaned up). "[A]n officer's subjective motivation—whether revealed at the time of the traffic stop or at the time of a suppression hearing—is irrelevant to the probable-cause inquiry." *United States v. Demilia*, 771 F.3d 1051, 1055 (8th Cir. 2014).

Here, Spottswood does not assert in his opposition that he was driving with a valid driver's license. Indeed, the undisputed record shows that Spottswood represented to the state court that he was driving without license stating, "the officer knew I didn't have license and pulled me over." (Dkt. 74-3 at 19; Dkt. 86 at 10.) Minnesota law requires an operator of a motor vehicle to have a valid license. *See* Minn. Stat. § 171.02, subd. 1 (providing that "a person shall not drive a motor vehicle upon a street or highway in this state unless the person has a valid license."). Driving without a valid license is a misdemeanor violation of Minnesota law. *See* Minn. Stat. § 171.241 ("It is a misdemeanor for any person to willfully violate any of the provisions of [Chapter 171]. . . ."). It is also undisputed that Deputy Peulen claimed that she had previous contact with Spottswood's vehicle and decided to pull the vehicle over after running the plate which showed that Spottswood's driver's status had been revoked. (Dkt. 71-2 at 3.) Based on the totality of the undisputed evidence in the record, the Court finds that an objectively reasonable police officer in Deputy Peulen's position could have formed a

reasonable suspicion that Spottswood was committing a traffic violation.  As such, the Court finds that the traffic stop of Spottswood did not amount to a violation of the Fourth Amendment.

Moreover, the Court finds that Deputy Peulen had probable cause to arrest Spottswood for violating Minn. Stat. § 171.02, subd. 1, for driving with a revoked license.  "Even though a warrant is typically required for an arrest, there are exceptions. One is when there is probable cause to believe that an individual is committing a crime in the officer's presence."  *United States v. Becerra*, 958 F.3d 725, 728 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 1081 (2021) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)).  "'To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'"  *United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).  As recently concluded by the Eighth Circuit:

> Officers "are not required to . . . have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest."  *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013).  Rather, probable cause requires that the officers involved in an arrest are "aware of facts establishing a fair probability" that the person being arrested has committed a criminal offense.  *United States v. Figueroa-Serrano*, 971 F.3d 806, 812 (8th Cir. 2020) (cleaned up).

*Walz v. Randall*, 2 F.4th 1091, 1100 (8th Cir. 2021) (citation omitted).

Plaintiff argues that Deputy Peulen did not have the authority to arrest him under

Minnesota Statute § 629.34[3] on the following basis:

> I never committed a felony, nor while not in her presence. No calls of
> suspicion. Passed.
> There was nothing committed, nor could she prove that any item in my illegal
> inventoried car was stolen.
>
> There was no felony committed, there was no probably cause, no police calls,
> nothing broken into, no reasonable suspicion to make an executive decision,
> unless you just wanted to arrest them out of spite and malice
>
> Again no reasonable cause to arrest.

(Dkt. 85 at 13.)  However, similar to the holding in *Becerra*, *supra*, under Minnesota law,

a peace officer, such as Deputy Peulen, can make a warrantless arrest on a number of

grounds including, but not limited to, the following circumstances:

> (1) **when a public offense has been committed or attempted in the
> officer's presence**;
>
> (2) when the person arrested has committed a felony, although not in the
> officer's presence; [and]
>
> (3) when a felony has in fact been committed, and the officer has reasonable
> cause for believing the person arrested to have committed. . . . .

Minn. Stat. § 629.34, subd. 1(c) (emphasis added).  In other words, a party can be

arrested even for a misdemeanor when it is committed in the presence of an officer.

Violation of § 171.02 for driving with revoked license is a misdemeanor, and there

is no dispute that Deputy Peulen witnessed Spottswood commit this offense.  For the

same reasons as stated forth above with respect to probable cause to conduct a traffic stop

---

[3]    The Court notes that State law violations on their own may not create claims under
§ 1983.  *See Collins v. Bellinghausen*, 153 F.3d 591, 596 (8th Cir. 1998).

of Spottswood, the Court finds that Deputy Peulen had probable cause to arrest Plaintiff on the basis for driving with a revoked license.  *See United States v. Brewer*, 624 F.3d 900, 905 (8th Cir. 2010) ("Here, Officer Moyle saw Brewer drive away from a drug transaction at the mall and, having already determined that Brewer had a suspended license, *see* Iowa Code § 321.218, requested that a patrol officer stop Brewer. Accordingly, we conclude that Officer Herbert had probable cause to stop and arrest Brewer for driving with a suspended license."); *see also Johnson v. Morris*, 453 N.W.2d 31, 36 (Minn. 1990) (citing *Smith v. Hubbard*, 253 Minn. 215, 221, 91 N.W.2d 756, 761 (1958)) ("Moreover, because Van Hal had probable cause to arrest, Johnson has no claim for false arrest or false imprisonment.  An officer may make a warrantless arrest for a 'public offense' committed in the presence of the officer. Minn. Stat. § 629.34, subd. 1(c)(1) (1988).  'Public offense' includes both misdemeanors and felonies, and need not involve a breach of peace.").

Spottswood also appears to argue a lack of probable cause because the revocation offense was never charged, asserting that the "tickets were never prosecuted because they were never there in the first place."  (Dkt. 85 at 19.)  However, the fact that he was not charged for an arrested offense does not mean that probable cause did not exist for the offense.  *United States v. Houston*, 548 F.3d 1151, 1154 (8th Cir. 2008) ("The fact that Houston was ultimately charged with possession, as opposed to DUI, does not impact the lawfulness of the arrest.").

In addition, Plaintiff argues that Deputy Peulen told him: "I was free to leave and would drop me off at the gas station.  Upon retrieving my phone is when she found the

legal jiggler keys. She found something legal to own, and arrested me for a felony, without probable cause." (Dkt. 85 at 10.) Plaintiff offers no evidence in support of this assertion. Instead, he points to what he asserts are inconsistencies in the record. Spottswood questions why Deputy Peulen would allow him to have his phone if he was under arrest and claims that after she retrieved the phone she screamed "your [sic] going to prison now" for the jiggler keys. (Dkt. 85 at 11, 13, 19.) He also includes excerpts in his opposition memoranda of what appear to be his criminal record off the Minnesota Judicial branch website (Dkt. 85 at 8-9), which he claims demonstrates that Deputy Peulen's "so called reasoning for taking me and arresting me is unfounded. I had no warrants, no missed court date as she stated. obviously[sic] were look at the time period before Sept 28, 2015, to three years back Sept 28 2012 that's the only one." (*Id.* at 10.) All of this ties into his argument that he could not be arrested merely for a misdemeanor under Rule 6.01 of the Minnesota Rules of Criminal Procedures. (*Id.* at 25-26.) While it is not entirely clear, it appears that Spottswood is referring to the following representations by Deputy Peulen regarding the basis for his arrest:

> [W]e discussed why he was driving when he knew he didn't have a valid license. I had SPOTTSWOOD step out of the vehicle and completed a pat down of his person for officer safety purposes, I asked him to have a seat in my squad car and he did so without issue, I asked SPOTTSWOOD if there was insurance on the vehicle, and he told me that there was not.

> At that point I started a tow and advised SPOTTSWOOD that I may be taking him to jail to post bail. He asked if he could have someone pick him up and requested the use of his phone to call for a ride, I retrieved SPOTTSWOOD's phone and wallet from the vehicle. He told me that his phone was not working and asked if I would drop him off at a gas station.

> After reviewing SPOTTSWOOD's driving record, I observed several suspensions for fail [sic] to appear or pay fines. I also checked in-house records and observed that he had had several recent contacts with law enforcement in which he had been driving the vehicle. I advised him that I didn't believe he would show up for court if I simply issued him a citation and that he had obviously continued to drive the vehicle without a valid license. I told him that I would be taking him to the jail to post bail.

(Dkt. 74-1 at 3.)

As starting point, Spottswood's claims that Deputy Peulen told him he was free to leave and only wanted to arrest him after illegally searching his vehicle is based on rank speculation.[4] "Mere speculation is insufficient to defeat summary judgment." *Lacey v. Norac, Inc.*, 932 F.3d 657, 660 (8th Cir. 2019) (citing *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 794 (8th Cir. 2012))*; see also Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (reasoning that to survive summary judgment, non-moving party must offer "more than mere speculation, conjecture, or fantasy" (quoting *Putman v. Unity Health Sys.,* 348 F.3d 732, 734 (8th Cir. 2003))). Similarly, "[a] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Awnings v. Fullerton*, 912 F.3d 1089, 1098 (8th Cir. 2019) (alteration in original) (quoting *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005)) (citation omitted).

---

[4] The Court notes that Plaintiff stated in his memorandum dated October 4, 2021 that "I would like to file a motion to compel the defense to disclose said police videos under rule 37 since they did not in good faith." (Dkt. 85 at 13.) The May 5, 2021, deadline under the Scheduling Order (Dkt. 43 at 3) for nondispositive motions expired before Plaintiff raised this issue, and Plaintiff has also failed to comply with Rule 56(d) of the Federal Rules of Civil Procedure.

Rule 6.01 of the Minnesota Rules of Criminal Procedures provides in relevant part as follows:

> By Arresting Officer. In misdemeanor cases, peace officers who decide to proceed with prosecution and who act without a warrant must issue a citation and release the defendant unless it reasonably appears:
>
> (1) the person must be detained to prevent bodily injury to that person or another;
> (2) further criminal conduct will occur; or
>
> (3) a substantial likelihood exists that the person will not respond to a citation.

Minn. R. Crim. P. 6.01(a). However, even assuming that Deputy Peulen did not have a basis to arrest Spottswood for revocation and lack of insurance under Rule 6.01(a) (even though Plaintiff's own records show that he had recently been cited for driving with a revoked license and without insurance in July 2015)[5], violation of such a state rule would not create a federal constitutional violation for purposes of a Section 1983 claim. *See Beltran v. Rollie*, Case No. 17-cv-1118 (PAM/HB), 2018 WL 2371762, at *4 (D. Minn. May 24, 2018); *Parada v. Anoka Cty.*, 332 F. Supp. 3d 1229, 1241 (D. Minn. 2018) ("But while States may regulate arrests however they wish, 'state restrictions do not alter the Fourth Amendment's protections.' The Court's only concern is whether Oman had probable cause to arrest Parada; whether Oman violated Rule 6.01 does not affect the Fourth Amendment analysis.") (quoting *Virginia v. Moore*, 553 U.S. 164, 166 (2008)). Here, the only concern for the purposes of the Fourth Amendment was whether probable

---

[5]    The Court notes that Deputy Peulen's actions in deciding whether to arrest Plaintiff for misdemeanor charges, as summarized in her initial complaint report (Dkt. 74-1 at 3), appear to be predicated on the requirements of Rule 6.01.

cause existed to arrest Plaintiff, which the Court concludes it did based on Plaintiff's undisputed admissions in the record that he was driving with a revoked license at the time he was arrested.

### 2.    Search of Spottswood's Vehicle

Defendants argue that Deputy Peulen's search of Spottswood's vehicle constituted a proper inventory search under the Fourth Amendment, as Deputy Peulen properly conducted the inventory search of Spottswood's vehicle in accordance with Washington County policies, a fact the state district court held and which Spottswood has never disputed throughout the entirety of litigation related to his arrest.  (Dkt. 73 at 15-16.) Spottswood counters that "Peulen could not search the said vehicle on policy, since she had no legal right to tow the vehicle, it was not an immediate danger to the public, it was not in traffic, and she had no grounds to arrest spottswood [sic], no warrants, no tickets, no police calls or suspicious activity going on in the middle of nowhere on a dirt road, violating my fourth amendment rights."  (Dkt. 85 at 15, 19.)

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)).  "Inventory searches are one of the well-defined exceptions to the warrant requirement of the Fourth Amendment."  *United States v. Morris*, 915 F.3d 552, 556 (8th Cir. 2019) (cleaned up).  "It is well-settled law that a police officer, after lawfully taking custody of an automobile, may conduct a warrantless inventory search of the property to

secure and protect vehicles and their contents within police custody." *United States v. Williams*, 777 F.3d 1013, 1015 (8th Cir. 2015) (cleaned up); *see also Morris*, 915 F.3d at 556; *Kennedy*, 427 F.3d at 1143 (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)). "They may be protecting themselves from claims of lost or damaged property or from any potential danger posed by the unknown contents of the vehicle." *United States v. Rowland*, 341 F.3d 774, 779 (8th Cir. 2003) (citation omitted). "The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." *Kennedy*, 427 F.3d at 1143. Inventory searches that are "conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable." *Id.* (cleaned up). Standardized police procedures are "necessary to ensure that the search is not merely a ruse for general rummaging in order to discover incriminating evidence." *Id.* (cleaned up).

The Court concludes the search of Spottswood's vehicle was a reasonable inventory search given the totality of the circumstances based on the undisputed evidence in the record. According to Washington County policy, towing is authorized when it is necessary to safeguard a vehicle due to the inability of the owner or operator to take the required action or when a vehicle cannot be in an area lawfully (including a vehicle with no insurance) and at arrest scenes, as it is necessary to safeguard a vehicle due to the inability of the owner or operator to take the required action. Moreover, pursuant to Washington County policy:

> All property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form. This includes the trunk and any compartments or containers, even if they are closed and/or locked. Members conducting inventory searches should be as thorough and accurate as practicable in preparing an itemized inventory. These inventory procedures are for the purpose of protecting an owner's property while the owner is in sheriff's custody, to provide for the safety of deputies and the public

(Dkt. 74-4 at 3.)  Here, there is no dispute that Plaintiff had been arrested for reasons other than a traffic warrant[6], *see supra* IV.A.1, the vehicle was parked on private property (a farm driveway), and the vehicle was not insured.  Deputy Peulen testified she conducted the inventory search to safeguard the contents upon towing.  (Dkt. 74-2 at 42.)  This comports with the Washington County Police policy as a valid basis for the tow and the search.  *See United States v. Marshall*, 986 F.2d 1171, 1175-76 (8th Cir. 1993) ("The police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity.  . . .  Thus, when the police conduct inventory searches according to such standardized policies, they may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their **sole** purpose is not to investigate a crime.") (emphasis added) (citations omitted); *see also United States v. Hall*, 497 F.3d 846, 851 (8th Cir. 2007) ("Even if the officer suspects he might uncover evidence in a vehicle, the police can still tow a vehicle and inventory the contents, as long as the impoundment is otherwise valid.") (cleaned up).

---

[6]     The Court notes that Washington County policy provides that an officer can consider leaving a vehicle if the arrest was related to a traffic warrant, which is not the case here.  (Dkt. 74-3 at 2-3.)

In short, the Court concludes the undisputed evidence in the record supports the finding that the inventory search of Spottswood's vehicle was proper under the Fourth Amendment.

For the reasons stated forth above, the Court recommends granting Defendants' Motion for Summary Judgment as to the Fourth Amendment claims against Deputy Peulen on the basis of qualified immunity.

**B.    State Law Claims Against Deputy Peulen and Washington County**

As set forth previously, the only other claims remaining in this action are the Minnesota state-law claims for malicious prosecution, abuse of process, and false imprisonment against Deputy Peulen and the vicarious liability claim against Washington County based on Deputy Peulen's alleged state-law violations.  However, because all of Spottswood's federal law claims should be dismissed, this Court recommends that the Court decline to exercise supplemental jurisdiction over his state law claims and dismiss them as well.

Pursuant to 28 U.S.C. § 1367, where a federal court has original jurisdiction, it also has supplemental jurisdiction over "all other claims so related to the claims in the original jurisdiction that they form part of the same case or controversy."  *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000).  In relevant part, 28 U.S.C. § 1367(a) provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  However, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *see also Porter v. Williams*, 436 F.3d 917, 920 (8th Cir. 2006) (holding that a trial court may *sua sponte* decline supplemental jurisdiction based on § 1367(c)(3)).  The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Missouri Roundtable for Life v. Carnahan*, 676 F.3d 665, 678 (8th Cir. 2012).  The Eighth Circuit has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible."  *Gregoire*, 236 F.3d at 420 (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990)).  And "'[w]here, as here, resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction.'"  *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (quoting *Farris v. Exotic Rubber and Plastics of Minn., Inc.,* 165 F. Supp. 2d 916, 919 (D. Minn. 2001)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

The Court has considered the factors relevant to the discretionary decision of whether to exercise supplemental jurisdiction.  It is true that the state law claims are

factually related to his federal claims and the Court has expended its resources addressing earlier motions. However, these considerations do not require a court to exercise supplemental jurisdiction where no federal claims remain. *See Willman v. Heartland Hosp. East*, 34 F.3d 605, 613 (8th Cir. 1994) ("[W]e have upheld the refusal to exercise jurisdiction over a state-law claim even though the federal claims were disposed of late in the proceedings and the court had already devoted significant judicial resources to the state claim.") (citation omitted). Judicial economy and comity weigh against retaining supplemental jurisdiction over the state claims, as by declining jurisdiction the Court avoids unnecessarily assessing a number of matters involving state law that Minnesota courts should have the opportunity to rule upon.

Consequently, the Court recommends that the Court decline to exercise supplemental jurisdiction over the Minnesota state-law claims for malicious prosecution, abuse of process, and false imprisonment against Deputy Peulen and the vicarious liability claim against Washington County based on Deputy Peulen's alleged state law violations and that those claims be dismissed without prejudice.

## V.    RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.    Defendants Washington County and Deputy Sarah Peulen's Motion for Summary Judgment (Dkt. 71) be **GRANTED**;

2.    Plaintiff's Fourth Amendment claims against Defendant Sarah Peulen related to Plaintiff's right to be free from unreasonable searches and seizures related to

his September 2015 arrest and search of his vehicle be **DISMISSED WITH PREJUDICE**; and

      3.     Plaintiff's Minnesota state-law claims for malicious prosecution, abuse of process, and false imprisonment against Defendant Sarah Peulen and the vicarious liability claim against Washington County based on Deputy Peulen's alleged state-law violations be **DISMISSED WITHOUT PREJUDICE**.

Dated: January 20, 2022                *s/Elizabeth Cowan Wright*
                                     ELIZABETH COWAN WRIGHT
                                       United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).